BEFORE THE SECOND DIVISION, MARCH 14, 1945

**No. 50056.**—Protests 982737–G, etc., of Stephen Rug Mills (New York).

KINCHELOE, Judge: This case is before us for consideration the second time by reason of a reversal of our judgment (C. D. 831) by our appellate court in the first trial and a remand of same by the court for further proceedings in Suit 4477 (C. A. D. 293).

As stated in our first decision, these suits are for the recovery of certain customs duties alleged to have been improperly assessed by the collector of customs at New York on imported rugs. The merchandise in issue consists of rugs composed wholly or in chief value of cotton, imported from Belgium and Italy. They were assessed with duty at the rate of 35 percent ad valorem under the provision of paragraph 921, Tariff Act of 1930, which, so far as pertinent, reads as follows:

PAR. 921. * * * all other floor coverings, including * * * rugs, wholly or in chief value of cotton, 35 per centum ad valorem.

The importer in its protests claims the merchandise dutiable under the same provision of said act of 1930, as modified by the Belgium-Luxemburg Trade Agreement, effective May 1, 1935, T. D. 47600, at 20 percent ad valorem, as "Imitation oriental rugs, wholly or in chief value of cotton." The contention of the plaintiff is that all of the rugs in question are commercially known as cotton imitation oriental rugs, irrespective of the designs thereon, and that they are therefore dutiable as such under said paragraph 921 of the tariff act, as modified by said trade agreement with Belgium.

In our opinion and judgment, Judge Lawrence not participating, we held that the plaintiff had not proven commercial designation of the instant merchandise under the rule laid down by the decisions of our appellate court (citing *Passaic Worsted Co. et al.* v. *United States*, 17 C. C. P. A. 459, T. D. 43916, and *United States* v. *M. J. Brandenstein & Co.*, 17 C. C. P. A. 480, T. D. 43941) for the main reason that plaintiff's witnesses testified that the common and commercial meanings in the trade and commerce of the United States of this merchandise were the same. The appellate court, however, reversed our judgment and held that the appellant had established a *prima facie* case of commercial designation at the trial.

In holding that in our judgment the plaintiff failed to prove a *prima facie* case of commercial designation, we were simply trying to follow the formula laid down many times by our appellate court on proving commercial designation, and especially within the purview of the case of *Passaic Worsted Co. et al.* v. *United States*, *supra*, which we consider one of the leading cases on this matter. We have always been of the opinion, and still are, that this rule is too much circumscribed.

It has always been our opinion, and the courts in substance have so held, that in order to prove commercial designation it must be proven by a preponderance of evidence that the trade designation under which an article is bought and sold in the usual wholesale quantities and in the usual course of trade throughout the trade and commerce of the United States differs from the common meaning of the article and that this trade designation is definite, uniform, and general. Of course, it is well settled that the common meaning of an article in the tariff act is a matter of law to be decided by the court.

The appellate court says in part:

* * *. Since it is so clear that the involved merchandise cannot possibly be included within the common meaning of "imitation oriental rugs, wholly or in chief value of cotton," we must hold as a *matter of law*, regardless of what the witnesses may have testified as to the common meaning being the same as that

of the trade designation, that the rugs here in issue do not respond thereto. [Italics ours.]

So, if that statement of the law is correct, it would have availed nothing if the Government had produced a hundred witnesses and proven by all of them that the involved merchandise was not known and sold in the trade and commerce of the country prior to June 17, 1930, as "imitation oriental rugs, wholly or in chief value of cotton." So why a *remand* of this case for further proceedings on the question of preponderance of evidence?

This enunciation of the law, in our judgment, not only does not jibe nor is it consonant with the legal definition of commercial designation so often defined by this and our appellate court, but directly contradicts the legal philosophy of commercial designation so long enunciated and followed:

Again the court states:

* * *. In none of the cases involving commercial designation have we been able to find a holding that it is necessary for a witness to state in so many words that commercial designation differs from common meaning.

To this we agree one hundred percent, for this is a matter solely for the court to decide. All that is necessary is that the proof of commercial meaning is sufficient to take the goods out of the common meaning of the term used in the statute, but in this case the witnesses for the plaintiff testified that the common and commercial meanings of the involved merchandise were the same. On this point the court said:

Viewing the testimony of appellant's witnesses who stated that there was no difference between the common meaning of the word "imitation" and the trade designation of the rugs, together with their further testimony that the merchandise was uniformly, definitely and generally bought and sold and known in the wholesale trade throughout the United States as "imitation orientals," "cotton imitation oriental rugs," and "imitation cotton orientals," it is clear to us that the witnesses either misunderstood the questions or were confused in that they could not separate their knowledge as floor-covering dealers from what would ordinarily be understood as the common meaning.

Well, we based our decision and judgment on our construction and interpretation of the record *as made* and not what might have been in the minds of the witnesses when they testified. In fact, we do not feel qualified to do that.

The court again said:

Since the trial court did not *weigh* all of the testimony in this case and decide the issue on preponderance of the evidence * *. * it is necessary to reverse the judgment and remand the case for further proceedings consistent with what has been set forth herein. [Italics ours.]

This is not an accurate statement and our opinion shows it, as follows:

As opposed to the testimony of plaintiff's witnesses that the imported articles were commercially bought and sold in the trade as cotton imitation oriental rugs, the Government called three witnesses. In view of the fact, however, that plaintiff's claim of commercial designation herein has not, in our judgment, been established under the requirements of the decisions of our appellate court cited, *supra*, we do not find it necessary to go into any detailed summary or discussion of the testimony of the Government's witnesses, although we *have carefully considered all of it.* * * *. [Italics ours.]

Again we have carefully considered the testimony of all of the Government's witnesses and the whole record.

However, since, in our opinion, the testimony of the Government's witnesses does not refute or preponderate the testimony of plaintiff's witnesses, within the purview of the decision of the appellate court, we have no other alternative than to sustain the protests, which we now do.

Judgment will be rendered accordingly.

CONCURRING OPINION

TILSON, Judge, specially concurring: In holding in our original decision that the plaintiff had failed to establish a *prima facie* case, we were carefully following the formula or rule laid down by our appellate court for proving commercial designation. One of the leading cases on this subject by our appellate court is *Passaic Worsted Co.* v. *United States*, 17 C. C. P. A. 459, from which we quoted in our original opinion, as follows:

At the risk of unnecessary reiteration, we repeat a suggestion as to this kind of evidence frequently heretofore made by us. If, in the case at bar, it was sought to establish commercial designation of the imported machines as textile machinery, *before attempting to do so it must be legally admitted that they have a commercial designation which differs from their common designation* and that, under the common designation, they are not textile machinery. Otherwise, and if they are commonly known as textile machinery, no occasion for proof of commercial designation exists. Then, having admitted this necessary legal premise, the next inquiry must be: "By what name are these articles designated uniformly, generally, and definitely in the trade wherever they are bought and sold?" If, to such an inquiry, the witness can respond that they are so designated as textile machinery, the evidence is competent and tends to prove commercial designation. A very good and substantial reason exists for so directing the inquiry. If the witness is uncertain in his statement, such uncertainty will readily appear on cross-examination. If, on the other hand, the witness is asked whether a certain article belongs within a certain class, the answer he gives will simply be his opinion, and the true facts may not be readily available on cross-examination. The rule of commercial designation is a wise one, but the rule is narrow and must be closely adhered to. [Italics ours.]

Although our appellate court has for a number of years held, in effect, that before attempting to establish commercial designation it must be "legally admitted" that the commercial designation of the article differs from the common meaning, we have not found ourselves in accord with such a holding. In fact, it has never been entirely clear exactly what was intended to be comprehended by the term "legally admitted."

While it is true that the witnesses in this case testified, in effect, that there was no difference between the common meaning and commercial designation of the rugs, it is well settled that the common meaning of a descriptive term used in a tariff act is a matter of law to be decided by the court, and that while the testimony of witnesses as to common meaning may be received, it is advisory only and the court is not bound by such testimony. *United States* v. *Florea*, 25 C. C. P. A. 292; *United States* v. *North American Mercantile Co.*, 17 C. C. P. A. 378; *Absorbo Beer Pad Co.* v. *United States*, 30 C. C. P. A. 24, and *United States* v. *Macksoud*, 27 C. C. P. A. 218.

Following the rule as to proof of commercial designation, laid down by our appellate court, we did not weigh the evidence offered by the Government in our original decision of this case, because under that rule it was unnecessary to do so, but since our appellate court found that "In our opinion appellant established a *prima facie* case at the trial," we have now considered and weighed all the evidence offered by the Government and find therefrom that such testimony does not overcome the *prima facie* case established by the plaintiff at the trial.

Therefore, following the decision of our appellate court, all the merchandise on the invoices covered by these suits which was assessed with duty at 35 percent ad valorem under paragraph 921, Tariff Act of 1930, is properly dutiable at only 20 percent ad valorem under said paragraph 921, as modified by the Belgium-Luxemburg Trade Agreement, T. D. 47600, as alleged by the plaintiff.

For the reasons stated I concur in the conclusion and judgment of my associate.